IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURIE DUNLAP, Ph.D<br>4189 Baird Road<br>Stow, Ohio 44224-3603 | )<br>)<br>)<br>) | CASE NO.<br><br>HON. |
| Plaintiff, | )<br>) | |
| | ) | **COMPLAINT** |
| Vs. | )<br>) | |
| | ) | **JURY DEMAND ENDORSED** |
| UNIVERSITY OF AKRON<br>c/o Ohio Atty. General Dave Yost<br>30 East Broad Street, 14th Floor<br>Columbus, Ohio 43215 | )<br>)<br>)<br>)<br>) | **HEREON** |
| Defendant. | ) | |

Plaintiff Laurie Dunlap, Ph.D (the "Plaintiff" or "Dunlap"), by and through her undersigned counsel, alleges as follows:

1. This is a sex discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et seq.) ("Title VII"), filed by a tenured Professor employed by the University of Akron until she was subjected to a reduction in force by the University in July of 2020 (the "RIF").

2. Plaintiff Laurie Dunlap is a female born in 1961.

3. Defendant University of Akron (the "University") is a state university located in Akron, Ohio.

4. The University is an employer within the meaning of Title VII.

## Jurisdiction and Venue

5. Plaintiff filed charges with the Equal Employment Opportunity Commission stemming from the RIF, and received her right to sue notification on October 15, 2021, which is within ninety (90) days of the filing of this Complaint.

6. Jurisdiction is conferred upon this Court pursuant to Title VII, 42 U.S.C. § 2000e-5.

7. Jurisdiction is conferred upon this Court by virtue of 28 U.S.C. § 1331 – federal question jurisdiction and 28 U.S.C. § 1343 - civil rights.

8. Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) as the claims arose in Summit County, Ohio where Defendant University of Akron has its headquarters.

## Professor Dunlap

9. Plaintiff Dunlap, who holds two Doctorate degrees, joined the University in 2006 as an Assistant Professor in the Math Department. Dunlap was promoted to tenured Associate Professor in 2012.

10. Dunlap taught a variety of pure math and math for educators courses while she was employed by the University. For several years prior to the RIF, Dunlap taught Calculus 1, Calculus 3, all of the Math Department's Geometry classes and Discrete Math.

### Reduction in Force

11. The University encountered significant budget problems in 2020 and, as a result, determined that it needed to reduce its expenses.

12. The Department of Math was targeted by the University to achieve a 25% budget reduction in 2020.

13. In order to achieve the 25% goal, numerous positions in the Department of Math needed to be eliminated.

14. Dr. Kevin Kreider, a male and Chair of the University's Math Department, oversaw the determination of how to reduce the Math Department's budget.

15. Kreider submitted his budget reduction recommendations to the University's EEOC Director, Tami Hannon. Among Kreider's recommendations were that Professor Dunlap's position, No. 3788, be put on the RIF list for the Department of Math. The University accepted all of Kreider's recommendations.

16. Kreider prepared a Position Abolishment Rationale for the elimination of Position No. 3788. A copy of this Rationale for Dunlap is attached hereto as Exhibit 1. The Rationale states that Position No. 3788 was being abolished for reasons of economy and estimated that the savings from doing so would be $95,832.

### 100% of the Math Department RIF List is Female

17. At the time of the RIF, the Math Department employed twenty-seven (27) full time professors, consisting of nineteen (19) men and eight (8) women.

The Department, therefore, was slightly less than 30% women prior to the RIF.

18. At the time of the RIF, the Math Department employed sixteen tenure track professors. Thirteen (13) of these tenure track professors were men and three (3) were women.

19. The University approved four (4) of the twenty-seven (27) Math Department professors for the RIF. Of the four chosen, three were women.

20. Within several days of the RIF announcement, one of the remaining professors in the Math Department voluntarily resigned. Due to this voluntary resignation, the Math Department was able to reduce the number of employees on the RIF list.

21. The University chose to take the single male professor, Hung Ngoc Nguyen, off the RIF list. As a result, 100% of the professors from the Math Department who were subject to the RIF were female.

22. After the RIF, the percentage of female professors in the Math Department decreased to 17.39%.

23. Not one of the male tenure track professors in the Math Department were subject to the RIF. However, sixty seven percent of the female tenure track professors in the Math Department were subject to the RIF.

24. The Math Department's selection of women professors for the RIF was statistically significant and inconsistent with a random selection.

25. The University's RIF determinations for the Math Department had an adverse effect on women.

**Shifting Factors Considered in RIF Recommendations**

26. The University has articulated several different methods used to determine which faculty members from the Math Department would be placed on the RIF list.

27. According to a RIF Individual Rationale/Criteria prepared for Dunlap by Kreider in the Summer of 2020, the **only** metrics used to decide to place Dunlap on the RIF were "Versatility in possible teaching assignments and level of research activity." A copy of Dunlap's Rationale/Criteria is attached hereto as Exhibit 2.

28. However, in an Affidavit submitted to the EEOC by Kreider on behalf of the University in January of 2021, Kreider stated that he looked at **five** components to determine who to place on the RIF list for the Math Department: Teaching Excellence, Teaching Versatility, Research Productivity, Area of Research and Efficiency in Teaching based on Compensation. A copy of this Affidavit is attached hereto as Exhibit 3.

29. More recently, in the summer of 2021, Kreider stated in discovery responses that in order to determine who to place on the RIF list he looked at faculty credentials in the categories of Teaching Excellence, Teaching Versatility, Research Productivity, Area of Research and Cost-Effectiveness. *See* Exh. 4, p. 4. The category of "Efficiency in Teaching Based on Compensation"

5

which Kreider included as a factor in January of 2021 had been replaced by Cost Effectiveness.

### Shifting Rationales for Recommending Dunlap for the RIF

30. According to the Rationale/Criteria prepared by Kreider in the Summer of 2020, the **only** factors he considered in placing Dunlap on the RIF list were "[v]ersatility in possible teaching assignments and level of research activity." Exh. 2. This Rationale/Criteria specifically states that Dunlap was selected for the RIF because: 1) her teaching performance was not well-suited for meeting programmatic needs expected for the next five years, and she lacked a career research program. The Rationale/Criteria also states other faculty members were better suited to teach essential courses and had more active research programs central to programmatic needs expected in the next five years.

31. In his January 2021 Affidavit about Dunlap, however, Kreider attests that he recommended Dunlap for the RIF list based on the criteria of Teaching Excellence and Research Productivity. Exh. 3, para. 10. In this Affidavit Kreider does not mention that Dunlap's Teaching Versatility was a component of his analysis, nor does Kreider explain why he only used two of his five measuring components (Teaching Excellence, Teaching Versatility, Research Productivity, Area of Research and Efficiency in Teaching based on Compensation) when he decided to place Dunlap on the list.

32. Kreider states in his Affidavit that Dunlap was placed on the RIF list in part because her teaching evaluations were the second lowest of all of the faculty members in the Math Department in 2018 – 19, the most recent year of teaching evaluations. However, a male professor, Lingxing Yao, had the lowest teaching evaluations in 2018 – 19, but was not placed on the RIF list.

33. Kreider's Affidavit also provides that other faculty members in the Math Department were better suited to teach essential courses. Exh. 3, para. 14. Not only is this statement untrue, several months later in his written discovery responses Kreider specifically stated that "Teaching Versatility was not an issue of concern" with respect to Dunlap. Exh. 4, p. 6.

34. Kreider also admits in his discovery responses that Dunlap was ranked high in Teaching Versatility, which directly contradicts the reason he had expressed one year earlier for his decision to place Dunlap on the RIF list. Exh. 4, p. 9.

35. The reasons articulated by the University for selecting Dunlap for the RIF have changed several times since July of 2020. At the time of her RIF, Dunlap was informed that she was selected because of her Teaching Versatility and level of research activity. Exh. 2. Then in January of 2021, Kreider stated that Dunlap was recommended for the RIF list because of her teaching evaluations, lack of career research program and the fact that other faculty members were better suited to teach essential courses. Exh.

7

3, paras. 10 – 14.  More recently, in the summer of 2021, the reason changed again when Kreider stated that "Teaching Versatility was not an issue of concern with … Dunlap's record."  Exh. 4, pp. 6, 9.

**Subjectivity in Math Department RIF Determinations**

36. Kreider, along with other Department heads at the University, was given latitude by the University to analyze the productivity and value of individual faculty members in determining who to recommend for the RIF list.

37. Kreider was the only person involved in recommending who from the Math Department would be placed on the RIF list.

38. In making his RIF recommendation Kreider did not employ an inherent weighing system that would allow for the ranking of faculty in a specific order for the Math Department.  Instead, Kreider looked at each individual member "in a holistic sense," and did not look at the details of performance data.  Exh. 4, p. 5.

39. Kreider stated that he looked at faculty credentials in five areas - Teaching Excellence, Teaching Versatility, Research Productivity, Area of Research and Efficiency in Teaching based on Compensation.  Kreider, however, also stated that he did not apply these measures uniformly to all of the faculty in the Math Department.  Exh. 4, p. 4.

40. According to the Rationale/Criteria which Kreider prepared for Dunlap in the Summer of 2020, he only looked at two of these five components in

deciding to put Dunlap on the RIF list: Teaching Versatility and level of research Productivity. Exh. 2.

41. Kreider did not use a point system to track research productivity. According to Kreider, the use of a point system was unnecessary because he believed he had enough experience to put faculty research efforts into "rough categories." Exh. 4.

42. A male professor, Dr. Andreas Aristotelous, had been hired by the Math Department in the Spring of 2020, but was not due to join the University until August of 2020. Despite the fact that Aritotelous had no record with the University, Kreider claimed to be able to assess Aristotelous's record in making the RIF assessments. Exh. 4, p. 8.

43. Kreider made the decision not to put Aristotelous on the RIF list because, according to Kreider, Aristotelous "had more to offer … in terms of recruiting and mentoring, curriculum development, active research activities and external funding" than others in the Math Department. Exh. 4, p. 8. Kreider did not employ any of the five components applied to the rest of the Math Department (Teaching Excellence, Teaching Versatility, Research Productivity, Area of Research and Efficiency in Teaching based on Compensation) in assessing Aristotelous.

44. The selection of professors for the RIF list by the Math Department was overly subjective and arbitrary.

45. The subjective selection of professors for the RIF list by the Math Department had a disparate impact on female professors.

### Math Department's History of Wage Discrimination against Female Professors

46. The University has a recent practice of discriminating against the female professors in the Math Department with respect to salary.

47. Professors Jeffrey Riedel and Hung Ngoc Nguyen, both male, were similarly situated to Dunlap in 2020, as all were Associate Professors who taught graduate level courses in pure math.  Riedel and Dunlap had a similar amount of experience; Nguyen had several less years of experience than Riedel and Dunlap.  Professor Riedel's annual salary was $11,132 more than Dunlap's and Professor Nguyen's annual salary was $6,041 more.

48. Professor Linda Marie Saliga, a woman, and Professor James P. Cossey, a man, were similarly situated in 2020. Both were Full Professors who taught courses in pure math and had similar years of experience.  Despite the fact that Professor Saliga had worked at the University for more than a decade longer than Professor Cossey, her annual salary was less than Professor Cossey's.

### COUNT ONE

### Disparate Treatment Sex Discrimination in Violation of Title VII, 42 U.S.C. §2000e-2

49. Dunlap incorporates by reference each and every allegation in paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50. Dunlap, who is female, is a member of a protected class under Title VII.

51. The University's actions, as described herein, resulted in Dunlap suffering an adverse employment action because of gender, in violation of Title VII.

52. The University's actions directly benefitted male professors in the Math Department, who were not subjected to the 2020 RIF.

53. The University's various acts taken in relation to the decision to subject Dunlap to the 2020 reduction in force constitute unlawful employment practices because of sex in violation of Title VII.

54. The following actions by the University constitute unlawful employment practices in violation of Title VII: a) Approval of RIF selections for the Math Department that had a detrimental effect only on female professors; b) Use of shifting and entirely subjective methods to determine the faculty from the Math Department to place on the RIF list; c) Provision of shifting and inconsistent rationales for Professor Dunlap's inclusion on the RIF list; and d) Recent practice of paying the male professors in the Math Department more than the female professors.

WHEREFORE, Dunlap demands that this Court grant her judgment against the University and the following relief:

A) All back pay and benefits lost due to the unlawful Reduction in Force;

B) Award Plaintiff compensatory damages based upon the trial of this matter;

C) Award reasonable attorney's fees and costs incurred to prosecute this action;

D) Award punitive damages against the University;

E) Award pre-judgment interest on all back pay and benefits and post-judgment interest on any judgment granting other damages or back pay and benefits;

F) Any other relief this Court deems necessary and just.

                Respectfully submitted,
                COHEN ROSENTHAL & KRAMER LLP


                /s/ Ellen M. Kramer

                Ellen M. Kramer #0055552
                emk@crklaw.com
                Joshua R. Cohen #0032368
                jcohen@crklaw.com
                3208 Clinton Avenue
                Cleveland, Ohio 44113
                216-815-9500 [Phone and Fax]
                www.crklaw.com


## JURY DEMAND

The Plaintiff demands a trial by jury on each claim that may be so tried.


                /s/ Ellen M. Kramer